IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

GARNETT MELTON,

      Petitioner,

v.                                   CASE NO. 3:15-cv-47-LC-GRJ

SECRETARY, FLORIDA DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Petitioner initiated this case by filing a *pro se* Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.)  In his Petition,

Petitioner raises ten grounds for relief, the majority of which involve claims

of ineffective assistance of counsel. (*Id.*) Respondent filed a response,

ECF No. 11, along with relevant portions of the state-court record. (ECF

Nos. 11-1–11-5 ("Ex.").[1]) Petitioner then filed a reply. (ECF No. 15.) Upon

due consideration of the Petition, the Response, the state-court record,

and the Reply, the undersigned recommends that the Petition be denied.[2]

---

[1] Where an exhibit is separately paginated, the pinpoint citations to the exhibits will be the lettered exhibit followed by the appropriate page number(s). If an exhibit is not separately paginated, the identification used will be the ECF designation at the top of the page followed by the corresponding page number.

[2] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules

## Summary of State-Court Proceedings

In October 2009 Petitioner was charged with selling, manufacturing, delivering, or possessing with intent to sell, manufacture, or deliver a controlled substance (Count 1); trafficking in amphetamine (Count 2); unlawful possession of listed chemical (Count 3); and possession of drug paraphernalia (Count 4). (Ex. A at 18.) Petitioner proceeded to a jury trial on his charges, and he was found guilty as charged in March 2010. (*Id.* at 160–61.) Petitioner was sentenced on June 3, 2010, to concurrent terms of 10 years in prison, with a 7 year minimum, for Counts 1, 2, and 3, and he was sentenced to time served on Count 4. (Ex. B at 232–37; Ex. F at 13–21.)

Petitioner filed a direct appeal to the First District Court of Appeal ("First DCA"). (Ex. G.) The First DCA affirmed as to Counts 2, 3, and 4, but reversed Count 1 based on double jeopardy. (Ex. I at 1–3.) Petitioner's motion for rehearing was denied on November 3, 2011, and the mandate followed on November 21, 2011. (*Id.* at 12–13.) Then on remand, the trial court entered a new judgment on November 20, 2012, with Count 1 vacated. (Ex. J.)

While the direct appeal was on remand, Petitioner submitted for

Governing Habeas Corpus Petitions Under Section 2254.

mailing his first state habeas petition in December 2011, alleging

ineffective assistance of appellate counsel. (Ex. K.) The First DCA *per*

*curiam* denied the petition on January 31, 2012. (Ex. L at 1.) Petitioner

sought to amend his brief, but the First DCA denied the motion as moot.

(*Id.* at 2–3, 43.)

Petitioner then filed his second state habeas petition in March 2012,

while his appeal was still on remand, again alleging ineffective assistance

of appellate counsel. (Ex. M at 1–20.) The First DCA also *per curiam*

denied this petition on April 13, 2012, and it denied Petitioner's motion for

rehearing on May 24, 2012. (*Id.* at 21, 28.)

Then on September 19, 2012, with his direct appeal still on remand,

Petitioner filed yet another state habeas petition. (Ex. N.) In this petition,

Petitioner alleged manifest injustice due to the First DCA's denial of his

petitions alleging ineffective assistance of appellate counsel. (*Id.* at 1–20.)

The First DCA then ordered the State to show why the petition for writ of

certiorari should not be granted, and the State responded. (*Id.* at 21–40.)

The First DCA then dismissed the petition on March 20, 2013, citing Rule

9.141(d)(6)(C) of the Florida Rules of Appellate Procedure. (*Id.* at 41.) And

on April 26, 2013, the First DCA denied Petitioner's motion for rehearing.

(*Id.* at 82.)

On December 31, 2012, Petitioner submitted for mailing his second amended Rule 3.850 motion.[3] (Ex. P at 1–43.)[4] After the State responded, the court granted an evidentiary hearing on five of the issues. (Ex. P at 130–200; Ex. Q at 201–300.) The hearing was held in September 2013. (Ex. R at 412–82.)  On December 6, 2013, the court denied the Rule 3.850 motion. (Ex. R at 483–514.) The First DCA *per curiam* affirmed without opinion on December 4, 2014, and the mandate followed on December 30, 2014. (Ex. AA.)

Petitioner then submitted the instant habeas petition to prison officials for mailing on February 8, 2015. (ECF No. 1.)

## Section 2254 Standard of Review

The role of a federal habeas court when reviewing a state prisoner's application pursuant to 28 U.S.C. § 2254 is limited. *Williams v. Taylor*, 529 U.S. 362, 403–04 (2000). Under section 2254(a), federal courts "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court only on the ground that

---

[3] Petitioner filed his first Rule 3.850 motion on July 30, 2012, but it was stricken with leave to amend. (Ex. O at 1–18.) His first amended motion was also stricken with leave to amend on December 19, 2012. (*Id.* at 19–22.)
Petitioner also requested leave to file a third amended Rule 3.850 motion, but his proposed motion was stricken for exceeding the page limit. (Ex. P at 115–17.)

[4] The pages numbers corresponding with Exhibit P onward are the page numbers printed in the bottom left-hand corner of the page.

he is in custody in violation of the Constitution or laws or treaties of the United States."

Additionally, federal courts must give deference to state court adjudications unless the state court's adjudication of the claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

With regard to factual findings, under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); 28 U.S.C. § 2254(e)(1). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow,* 134 S. Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

As to legal findings, as mentioned above, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003); *see also Carey v. Musladin,* 549 U.S. 70, 74–77 (2006).

"Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" *Jones v. GDCP Warden*, 753 F.3d 1171, 1182 (11th Cir. 2014) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).  For § 2254(d)(1), clearly established federal law includes only the holdings, not the dicta of Supreme Court decisions. *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014).  "Under § 2254(d)(1)'s

'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Jones*, 753 F.3d at 1182 (alteration in original) (quoting *Williams*, 529 U.S. at 413).

The Supreme Court has interpreted § 2254(d) as requiring that "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "[A]n 'unreasonable application' of [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Woodall*, 134 S.Ct. at 1702. In other words, Petitioner must establish that no fairminded jurist would have reached the Florida court's conclusion. *See Richter*, 562 U.S. at 102–03; *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257–58 (11th Cir.2012). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

In light of *Gill*, the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers

the reasonableness of the trial court's fact-finding only to the extent that the state court's ultimate conclusion relied on it. 633 F.3d at 1292. A federal habeas court can consider the full record before it to answer "the only question" that matters: "whether the state court's determination [was] objectively unreasonable." *Id.* at 1290.

## Ineffective Assistance of Counsel

Because many of Petitioner's claims allege ineffective assistance, a review of the applicable law is necessary. Under *Strickland v. Washington*, to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate that (1) his counsel's performance was below an objective and reasonable professional norm, and (2) he was prejudiced by this inadequacy. *Strickland*, 466 U.S. 668, 686–96 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules"

for determining whether counsel's actions were indeed reasonable, as

"[a]bsolute rules would interfere with counsel's independence–which is also

constitutionally protected–and would restrict the wide latitude counsel have

in making tactical decisions."  *Putnam v. Head*, 268 F.3d 1223, 1244 (11th

Cir. 2001).  "To uphold a lawyer's strategy, [the Court] need not attempt to

divine the lawyer's mental processes underlying the strategy." *Chandler v.

United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No

lawyer can be expected to have considered all of the ways [to provide

effective assistance]."  *Id*.

> If a defense lawyer pursued course A, it is immaterial that some
> other reasonable courses of defense (that the lawyer did not
> think of at all) existed and that the lawyer's pursuit of course A
> was not a deliberate choice between course A, course B, and
> so on.  The lawyer's strategy was course A.  And [the Court's]
> inquiry is limited to whether this strategy, that is, course A,
> might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that

counsel's unreasonable conduct might have had "some conceivable effect

on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.  Instead, a

defendant must show a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been

different."  *Id*. at 694.  A "reasonable probability is defined as a probability

sufficient to undermine confidence in the outcome." *Id*.

When the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington*, 562 U.S. at 102. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 100 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102.

A federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief

must be denied. *Id*. Stated another way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may the federal court grant relief. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 105.  When combined with the extra layer of deference that § 2254 provides, the result is double deference, and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that a state court denied on the merits is found to merit relief in a federal habeas proceeding.

**Section 2254 Exhaustion Requirement**

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate

review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To

properly exhaust a federal claim, a petitioner must fairly present the claim

in each appropriate state court, thereby affording the state courts a

meaningful "opportunity to pass upon and correct alleged violations of its

prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)

(internal quotation marks omitted) (quoting *Duncan v. Henry*, 513 U.S. 364,

365 (1995)).

## DISCUSSION

**Ground One: Petitioner's counsel was not ineffective for failing to object to the court's jury instructions or for failing to request different jury instructions regarding constructive possession.**

Petitioner contends that his trial counsel was ineffective for failing to

object to the allegedly improper jury instructions regarding constructive

possession. Specifically, Petitioner says that the jury instructions did not

include the State's burden on how to prove and establish constructive

possession as appears in the Florida Supreme Court Jury Instructions.

Petitioner argues that his counsel's failure to object to this omission

regarding constructive possession cannot be viewed as effective

assistance of counsel as guaranteed by the Sixth Amendment under

*Strickland*. (ECF No. 1 at 6–8.)

On post-conviction review, the state court interpreted Petitioner's

claim as alleging "that his counsel was ineffective for failing to request that the verbatim full-length jury instructions be used." The state court held an evidentiary hearing on this claim.

In rejecting this claim, the state court relied on testimony from Petitioner's trial counsel at the evidentiary hearing. Petitioner's counsel testified that he reviewed the jury instructions with Petitioner, that Petitioner did not object to the jury instructions, and that his decision regarding the jury instructions was strategic. Petitioner's trial counsel further testified that the jury instructions contained the converse of the specified additional language and that his closing argument described the issues regarding constructive possession that the State failed to prove. (Ex. R at 486–88.)

The state court then determined,

> After considering the testimony presented at the evidentiary hearing, the Court concludes that the defendant has failed to demonstrate an entitlement to relief. The Court finds Mr. Jason McKinney's testimony to be credible. The defendant does not establish that counsel's performance was deficient. Specifically, Mr. Jason McKinney testified that his decision regarding the jury instructions was a "strategy decision." The record reflects that Mr. Jason McKinney reviewed the jury instructions with the defendant and that the defendant did not raise any issues with the instructions. The Court also finds that Mr. Jason McKinney's decision not to object to the omission of the specified portions of the jury instructions regarding construction possession was a strategic decision. The Court further finds that Mr. Jason McKinney's decision not to request any additional portions of the jury instructions regarding constructive possession was a strategic decision. Contrary to

the defendant's allegation, he does not establish prejudice merely because he believes additional portions of standard jury instructions were "material and pertinent" to the jury's determination. Therefore, counsel was not ineffective, and the defendant is not entitled to relief.

(*Id.* at 488–89) (footnotes omitted). The First DCA *per curiam* affirmed without opinion. (Ex. AA.)

Considering the state court denied this claim on the merits, the Court must give the state court's finding double deference so that the question for this Court becomes whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Here, a reasonable argument exists that counsel satisfied *Strickland*'s deferential standard and, therefore, that the state court's rejection of Petitioner's argument and application of *Strickland* was not objectively unreasonable.

As discussed above, to prevail on this claim based on ineffectiveness of counsel, Petitioner must show (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that Petitioner was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The Court may dispose of the claim if Petitioner fails to carry his burden of proof on either the performance or the prejudice prong. *Id.* at 697.

With regard to the performance prong, Petitioner has failed to show

that counsel's conduct was below an objective and reasonable professional norm in not objecting to the jury instructions. To meet this standard, Petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Grayson*, 257 F.3d at 1216.

Although Petitioner makes the conclusory argument that such a strategy was unreasonable because it was based on a misunderstanding of the law, he has failed to show that his counsel acted unreasonably or that no other competent counsel would have decided not to object to these instructions. It was a reasonable strategy to argue in closing argument that the State failed to prove its case, particularly where the actual possession and constructive possession were defined in the jury instructions and particularly where Petitioner did not object to the jury instructions at trial. Trial counsel testified credibly to this at the evidentiary hearing, and the record reflects his testimony. (Ex D. at 196–200; Ex. E at 201–5; Ex. T at 813–14, 817–28.)  Accordingly, counsel's performance was not deficient. *See Strickland*, 466 U.S. at 681 ("Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected . . . if they are based on professional judgment.").

With regard to the prejudice prong, Petitioner has failed to show that

he was prejudiced by his counsel's conduct. To show prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome."  *Id.* at 693. Although Petitioner argues that the omitted jury instructions resulted in lessening the State's burden in proving its case, and constituted fundamental error, such a conclusory allegation fails to actually prove prejudice.

To grant habeas relief, the Court must find that the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). Because Petitioner has failed to prove either prong of the *Strickland* test, nothing Petitioner has presented demonstrates that the state court's rejection of this ineffective assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt,* 134 S. Ct. at 12 (quoting *Harrington*, 131 S. Ct. at 787). The Court therefore concludes that there is a reasonable argument that his counsel satisfied *Strickland*'s deferential standard, so Petitioner is not entitled to federal habeas relief on ground one.

**Ground Two: Petitioner's counsel was not ineffective for failing to move to suppress the custodial interrogation that was allegedly obtained in violation of Petitioner's constitutional rights.**

Petitioner contends that his trial counsel was also ineffective for failing to move to suppress his testimony acquired through a custodial interrogation, which occurred when Petitioner was detained at his residence while waiting for the investigator to arrive. Petitioner says this interrogation was used to compel Petitioner to provide incriminating information about himself. Consequently, Petitioner argues, the testimony should have been suppressed as "fruits of the poisonous tree" doctrine after the court determined that there was an illegal entry and search. (ECF No. 1 at 9–10.)

On post-conviction review, the state court also held an evidentiary hearing with regard to this claim. Mr. Steven Tector, a deputy with the Walton County Sheriff's Office; Mr. Jason McKinney, Petitioner's trial counsel; and Ms. Patricia Wallens, an individual Petitioner called the night of the search, testified at the evidentiary hearing. Specifically, Petitioner's trial counsel stated that he investigated the circumstances surrounding the statements Petitioner made to law enforcement, including discussing them with Petitioner, deposing officers, and reviewing the records provided in discovery. Petitioner's trial counsel stated that he filed a motion to

suppress related to the protective sweep because it would have made it

very difficult for the State to prove anything if that evidence were

suppressed. After the hearing on the motion to suppress, Petitioner's

counsel found no good faith basis for filing a separate motion related to the

custodial interrogation. (Ex. R at 503–04.)

      In rejecting the claim, the state court stated,

> After considering the testimony and exhibits presented at the evidentiary hearing, the Court concludes that the defendant has failed to demonstrate an entitlement to relief. The Court finds Mr. Jason McKinney's testimony to be credible. The testimony reflects that the defendant's trial counsel made a strategic decision not to file a motion to suppress regarding the defendant's "custodial interrogation." Instead, Mr. Jason McKinney filed a motion to suppress regarding the protective sweep, which if granted in its entirety would have resulted in all of the seized evidence being suppressed. Although the trial court held that the protect sweep was illegal, such a ruling did not result in all of the evidence being suppressed because the trial court also held that sufficient evidence existed for a search warrant. The testimony also reflects that Mr. Jason McKinney had discussions with the defendant regarding the motion to suppress that was filed and that the defendant was present during the motion to suppress hearing. The Court will not second guess a strategic decision by counsel merely because the defendant now wishes counsel had used a different strategy. Therefore, the instant claim is denied.

(Ex. R at 504–05) (footnotes omitted). The First DCA *per curiam* affirmed

without opinion. (Ex. AA.)

      Petitioner's conclusory allegations that the strategy was based on a

failure to understand the law and that the testimony regarding the

substance of the conversation with the investigator violated Petitioner's Fourth and Fifth Amendment rights, and thus should have been suppressed, fails to show that counsel's performance was deficient based on his strategic decision regarding the filing of the motion to suppress.

After counsel's thorough investigation into the circumstances of the custodial interrogation and statements Petitioner made to law enforcement, it was reasonable for Petitioner's counsel to first file a motion to suppress regarding the protective sweep, which, if successful, could have resulted in the suppression of all the evidence seized in the house.

It was not unreasonable for Petitioner's counsel not to file a second motion to suppress because he did not have a good faith basis for doing so after a suppression hearing on the original motion and when the State still could have proceeded on the charges against Petitioner even if the motion were granted. (*See* Ex. T at 803–11.) Because Petitioner's counsel exercised reasonable strategy in not filing a motion to suppress the custodial interrogation, Petitioner's counsel's performance was not deficient.

Because Petitioner has not shown deficient performance, the Court need not address the prejudice prong of *Strickland*. The Court therefore concludes that the state court's decision denying this claim on post-

conviction review is not contrary to or an unreasonable application of

federal law that has been clearly established by decisions of the Supreme

Court. *See* 28 U.S.C. § 2254(d)(1). The Court therefore concludes that

Petitioner is not entitled to federal habeas relief on ground two.

**Ground Three: Petitioner's counsel was not ineffective for failing to object to the State's alleged suppression of exculpatory evidence and for failing to move for a *Richardson* hearing.**

Petitioner next contends that his trial counsel was ineffective for

failing to object to the State's alleged suppression of a video taken of the

residence prior to law enforcement's search of the home after the video

was requested during a deposition. Petitioner says that this video evidence

would have shown the residence before investigators removed supposed

common everyday household items from obscure locations to photograph

them. Petitioner says that had this video been presented, there would not

have been a finding of probable cause. (ECF No. 1 at 10–11.)

This claim encompasses two grounds that Petitioner raised in his

Rule 3.850 motion.[5] In the first ground, Petitioner alleged that his counsel

_____

[5] Respondent points out that some of the facts in support of Petitioner's ground for relief in the pending habeas petition go beyond what Petitioner asserted in his Rule 3.850 motion and, therefore, the claim is procedurally barred. Specifically, Petitioner has added that the common household items that the video would have shown were a propane tank next to a gas fireplace and a construction fan and other construction tools. He also says the video would have offered an objective video replay of the location of items. (ECF No. 11 at 9–10.) Notably, these added facts do not change the

was ineffective for failing to object to a *Brady* violation for video evidence.

In rejecting this claim on post-conviction review, the state court reasoned

that

> the defendant does not demonstrate a facially sufficient <u>Brady</u> claim because he does not allege that he discovered the "video" after trial. Instead, the defendant acknowledges that his counsel learned of the "video" as early as during a pre-trial deposition. The "video" could not be considered suppressed because the defendant was aware of the "video" before trial.
>
> Additionally, the defendant does not show that the state possessed exculpatory or impeaching evidence that it willfully or inadvertently suppressed. In an attempt to support his claim, the defendant references a single page of a pre-trial deposition where his counsel asked a witness if he possessed a copy of "the video." The defendant appears to argue that . . . "the prosecuting State Attorney [being] present during this deposition was fully aware of the subject video" in some way proves that the state possessed and "intentionally suppressed" such "video evidence." However, such a conclusory allegation does not establish automatically that the state actually possessed exculpatory or impeaching evidence. Additionally, a single page of a deposition that does not include the witness's name or a description of "the video" fails to prove that a "video" was suppressed willfully or inadvertently by the state.
>
> Furthermore, the defendant does not demonstrate prejudice. The defendant does not explain how he was prejudiced considering that he does not establish that the state possessed and willfully or inadvertently suppressed a "video." Indeed, the defendant cannot be prejudiced by the failure to disclose a "video" of which he acknowledges his counsel already knew existed. Therefore, the instant claim must be denied.

(Ex. R at 498–99) (footnotes omitted). The First DCA *per curiam* affirmed

---

reasoning regarding the rejection of Petitioner's ineffective assistance of counsel claim.

without opinion.  (Ex. AA.)

In the second relevant ground in his Rule 3.850 motion, Petitioner alleged that his counsel was ineffective for failing to request a *Richardson* hearing regarding the State's suppression of the video evidence. The trial court held an evidentiary hearing with regard to this claim, during which Petitioner's trial counsel testified. Petitioner's trial counsel testified that he discussed the existence of this video with the State and law enforcement, he requested the video multiple times in writing, and he raised the issue with the trial court. However, he never received the video. (Ex. R at 500–01.)

In rejecting this claim on post-conviction review, the state court reasoned that

> [t]he defendant does not establish that the state intentionally withheld the "video." The evidentiary hearing testimony reflects that the state attempted to locate and provide the video, but the state's attempt to discover the video were unsuccessful. Additionally, Mr. Jason McKinney testified that the state did not produce any information at trial that was unknown to counsel or that could have been learned from a video. Such testimony indicates that the state never had an opportunity to view the video, which is the expected result if it had ever possessed such video. As a result, the defendant does not establish that a discovery violation occurred. In any event, assuming that a discovery violation actually existed, Mr. Jason McKinney testified that he raised the issue with the trial court. Therefore, counsel's performance could not be deficient. Considering that the defendant fails to demonstrate a

discovery violation occurred, he cannot establish that procedural prejudice existed. Other than the prejudice allegations stated in his second amended motion and memorandum described above, the defendant did not present any supporting testimony or exhibits during the evidentiary hearing. As a result, the defendant does not show a reasonable probability that his trial preparation strategy would have been different. Indeed, the defendant does not explain how a *video* of a protective sweep would how [sic] documented that a *smell* was the result of burned chicken and not of suspected drug activity. The defendant does not explain whether such a video even would have depicted the location where the chicken was burned or where the motor was located. Considering the trial testimony and the defendant's acknowledged defense, it is not logical that a single video of "household items" would have resulted in a materially different trial preparation or strategy. Therefore, counsel could not have been ineffective, and the defendant is not entitled to relief.

(Ex. R at 501–02.)  The First DCA *per curiam* affirmed without opinion. (Ex. AA.)

Because the state court denied this claim on the merits, the Court must give the state court's finding double deference so that the question for this Court becomes whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Here, a reasonable argument exists that counsel satisfied *Strickland*'s deferential standard despite failing to object to the alleged suppression of evidence and failing to move for a *Richardson* hearing.

As the trial court repeatedly pointed out, there is no real evidence

that the State actually suppressed evidence or that any discovery violation occurred. While it is true that the video was never received by Petitioner or his counsel, Petitioner's counsel did everything he could to try to locate the video. The State did not possess this video, as reflected in the testimony of Petitioner's counsel that nothing was used at trial that he was unaware of or that could have been learned from the video. Because there is no evidence that the State suppressed any evidence, Petitioner's counsel was not deficient for failing to object to the suppression of evidence or moving for a *Richardson* hearing.

Petitioner also failed to show that he was prejudiced by his counsel's conduct regarding this video. Although Petitioner alleges that the video would have been impeachment evidence against the investigators, would have exonerated Petitioner, and would have been proof that there was no probable cause, such a conclusory allegation does not suffice. Accordingly, because Petitioner has failed to show that there was any discovery violation or that the state suppressed the video, Petitioner cannot show that anything would have been different had his counsel objected to the alleged suppression or moved for a *Richardson* hearing. *See Strickland*, 466 U.S. at 694 (noting that to show prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different").

For these reasons, the Court has no trouble concluding that the state court's determination that Petitioner failed to show his counsel was deficient and that he was prejudiced by his counsel's failure to object is not contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). Thus, Petitioner is not entitled to federal habeas relief on ground three.

**Ground Four: Petitioner's counsel was not ineffective for failing to argue Petitioner's Fourth Amendment claim and move for a *Franks* hearing.**

Petitioner next contends that his trial counsel was ineffective for failing to fully raise Petitioner's Fourth Amendment claim by failing to challenge the probable cause affidavit and subsequent search warrant as well as failing to investigate an officer's statements surrounding the alleged illegal search.  According to Petitioner, had his counsel challenged the search warrant under *Franks v. Delaware* at the suppression hearing based on the allegedly fabricated affidavit and misleading facts, there is a reasonable probability that the court would have suppressed the illegally obtained evidence. (ECF No. 1 at 11–14.)

In rejecting this claim on post-conviction review,[6] the state court first

determined that

> the defendant does not demonstrate a facially sufficient claim.
> First, the defendant does not establish that a portion of the
> search warrant was false or contained omitted information.
> Contrary to the defendant's allegation, the "residence was
> seized" because law enforcement noticed a strong chemical
> odor inside the residence while responding to a "disturbance
> call." Additionally, the search warrant and attachments reflect
> the specified information regarding Mr. James Smith's drug use
> was included. . . .
>
> Second, the defendant does not establish automatically
> that information was omitted intentionally or with reckless
> disregard merely because he believes such information should
> have been included. Indeed, the defendant's use of the phrase
> "misleading facts" tends to contradict any allegation that
> information was omitted intentionally or with reckless disregard.
> To the extent that the defendant alleges his counsel should
> have challenged the search warrant and affidavit because
> information was omitted regarding actual ownership of the
> illegal drugs, such information would have been immaterial to a
> probable cause determination. Therefore, the defendant does
> not demonstrate that a valid basis existed upon which defense
> counsel could have requested a <u>Franks</u> hearing. As a result,
> counsel's performance could not have been deficient. To the
> extent that the defendant alleges counsel should have
> challenged law enforcement's "protective sweep" of the
> residence, counsel's motion to suppress was filed to challenge
> the protective sweep.

(Ex. R at 490–92) (footnotes omitted).

The trial court went on to discuss Petitioner's failure to establish

---

[6] This was not one of the issues on which the state court held an evidentiary hearing.

prejudice as well. Most notably, the court stated: "other than raising conclusory allegations, the defendant does not provide sufficient facts to establish that the search warrant would have [been] declared invalid and that the court would have applied to the exclusionary rule to any evidence that was used at his trial." (Ex. R at 492.) The First DCA *per curiam* affirmed the trial court's denial of the claim on post-conviction relief without opinion.  (Ex. AA.)

As the trial court correctly concluded, Petitioner has failed to show that his trial counsel's decision not to challenge the search warrant constitutes deficient performance—the decision did not fall below an objective and reasonable professional norm.  To meet this standard, Petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Grayson*, 257 F.3d at 1216. Because there was no basis to request a *Franks* hearing, Petitioner cannot show that no competent counsel would have chosen not to move for a *Franks* hearing. Therefore, Petitioner has not shown deficient performance.

Additionally, Petitioner has failed to show how he was prejudiced by his counsel's conduct. As the state court pointed out, conclusory allegations—such as "a reasonable probability exists that the court would have suppressed the illegally obtained evidence"—are insufficient to show

prejudice. Further, because there was no basis for a *Franks* hearing,

Petitioner cannot be prejudiced by his counsel's failure to request one.

Therefore, the Court oncludes that the state court's decision denying

this claim on post-conviction review due to Petitioner's failure to show

deficient performance and prejudice is not contrary to or an unreasonable

application of federal law that has been clearly established by decisions of

the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). The Court therefore

concludes that Petitioner is not entitled to federal habeas relief on ground

four.

## Ground Five: Petitioner's claim that the trial court erred in denying Petitioner's motion to suppress is barred.

Petitioner contends that the trial court erred when it denied his

motion to suppress after properly finding that the "protective sweep" of the

house was unlawful. Petitioner says that an investigator illegally searched

the residence and fabricated a search warrant using fruits from the illegal

search. Further, he says that the probable cause affidavit failed to satisfy

probable cause, so the motion to suppress should have been granted.

(ECF No. 1 at 15.)

The Supreme Court has held that a federal court cannot entertain a

claim by a habeas petitioner alleging a Fourth Amendment violation when

the petitioner has had an opportunity for full and fair litigation of that claim in the state courts. *Stone v. Powell,* 428 U.S. 465, 494 (1976); *see also Bradley v. Nagle*, 212 F.3d 559, 564–65 (11th Cir. 2000) ("[S]o long as a defendant has had the opportunity to present his Fourth Amendment claims to the state trial and appellate courts, the objectives of the exclusionary rule have been satisfied."). "'[F]ull and fair consideration' in the context of the Fourth Amendment includes 'at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when there are facts in dispute, and full consideration by an appellate court when the facts are not in dispute.'" *Bradley,* 212 F.3d at 564–65 (quoting *Caver v. Alabama*, 577 F. 2d 1188, 1191 (5th Cir. 1978)); *see also Caver*, 577 F.2d at 1192 ("If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, Stone v. Powell bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.").[7]

The record reveals that Petitioner had a full and fair opportunity to litigate this claim in state court. To start, Petitioner filed a motion to suppress. (Ex. A at 43–46.) After an evidentiary hearing where Petitioner

---

[7] The Eleventh Circuit has adopted the decisions of its predecessor court, the Fifth Circuit decided prior to September 30, 1981, as binding precedent. *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

presented evidence, the trial court denied the motion on its merits, finding

that although the "protective sweep" was invalid, there was probable cause

for a search warrant without the evidence obtained in the protective sweep.

(Ex. C at 1–42; Ex. F at 30–36.)  Accordingly, his motion to suppress was

fully and fairly litigated at the trial court level, and the appellate court later

affirmed this decision after reviewing briefs by Petitioner and the State.

(Ex. G at 13–18; Ex. H at 18–33; Ex. I at 2; Ex. R at 543–45.)

Petitioner does not contend that he was denied the opportunity to

present facts to the trial court or to argue the issue before an appellate

court. He in fact did both. Rather, he challenges the decision of the trial

court regarding his motion to suppress. The record demonstrates that

Petitioner was afforded the opportunity to fully and fairly litigate his Fourth

Amendment claim in state court. Accordingly, this Court is precluded from

reviewing this claim on federal habeas review. *See Stone,* 428 U.S. at 494.

The Court therefore concludes that Petitioner is not entitled to federal

habeas relief on ground five.

**Ground Six: Petitioner's counsel was not ineffective for failing to investigate and re-depose a key state witness and advise the state court of the State's alleged violation of Rule 3.220(l) through witness tampering.**

Petitioner next argues that his trial counsel was also ineffective for

failing to investigate and re-depose two key witnesses after learning that an investigator allegedly tampered with these witnesses. Petitioner also argues that his counsel was ineffective for failing to advise the court of this alleged witness tampering, which he says violated Rule 3.220(I) of the Florida Rules of Criminal Procedure. (ECF No. 1 at 16–18.)

On post-conviction review, the state court also held an evidentiary hearing with regard to this claim. Petitioner's trial counsel and one of the key witnesses testified, among others. Specifically, the key witness testified that no one told her what to say during her deposition and that she did not talk to anyone outside the office before her deposition. Petitioner's trial counsel testified that he discussed the alleged witness tampering with Petitioner and that he did not re-depose those witnesses because he anticipated asking any additional questions at the trial. (Ex. R at 505–06.)

In rejecting the claim, the state court stated,

> After considering the testimony and exhibits presented at the evidentiary hearing, the Court concludes that the defendant has failed to demonstrate an entitlement to relief. Although the Court finds the testimony of Mr. Jason McKinney and Ms. Kathreen Smith to be credible, the defendant's alleged "witness tampering" claim is without merit. In particular, the defendant does not establish that the alleged "witness tampering" event actually occurred. . . . Ms. Kathreen Smith, who was allegedly subjected to the "witness tampering," denied that such an incident occurred. In fact, Ms. Kathreen Smith testified that no one ever told her how to testify at any pre-trial deposition.

Additionally, Ms. Kathreen Smith testified that the only time she met Investigator Brian McLaurin was at the police substation during the initial interview on the day of the underlying offense.

At best, the testimony at the evidentiary hearing indicates that Investigator Brian McLaurin was present on the day of pre-trial depositions and *may have* stopped two witnesses outside of such depositions. However, the content of such a conversation is not established. . . . Considering such information and that the allegedly "tampered" witness denied that the event occurred, the defendant does not show a valid basis existed upon which Mr. Jason McKinney could have "redeposed" the specified witnesses. In any event, Mr. Jason McKinney's decision not to "redepose" Mrs. Telina Erhardt or Ms. Kathreen Smith was strategic. Furthermore, to the extent that any alleged "witness tampering" may have become an issue during the defendant's trial, Mr. Jason McKinney raised such an issue "mid-trial." Therefore, the instant claim is denied.

(Ex. R at 507–08) (footnotes omitted). The First DCA *per curiam* affirmed without opinion. (Ex. AA.)

Petitioner cannot prove that his counsel's performance was deficient for failing to re-depose these two witnesses or for failing to alert the trial court of witness tampering because Petitioner failed to establish that any such witness tampering ever occurred. Petitioner's counsel testified that he had discussions with Petitioner about the witness tampering and that he made the strategic decision to not de-depose the witnesses because he could ask them additional questions at trial, which was a reasonable strategy. Additionally, Petitioner's counsel testified that he brought the potential witness tampering to the attention of the court in the middle of the

trial. (Ex. T at 808–09.) Because Petitioner's counsel exercised reasonable strategy in not re-deposing the witnesses, and instead bringing potential witness tampering to the court's attention, Petitioner's counsel's performance was not deficient, particularly in view of the fact that there was no evidence of witness tampering.

Because Petitioner has not shown deficient performance, the Court need not address the prejudice prong of *Strickland*. The Court therefore concludes that the state court's decision denying this claim on post-conviction review is not contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). The Court therefore concludes that Petitioner is not entitled to federal habeas relief on ground six.

**Ground Seven: Petitioner's counsel was not ineffective for failing to move for a *Richardson* hearing on the alleged suppression of officer's field notes.**

Petitioner next contends that his trial counsel was ineffective for failing to notify the court of the State's suppression of four officers' field notes discussing their participation in the case after his counsel requested them in discovery. Petitioner says his trial counsel should have moved the court for a *Richardson* hearing and then deposed the four officers. Further, Petitioner says that these notes constitute police and investigative reports

prepared in connection with a case and thus should have been disclosed.
(ECF No. 1 at 18–19.)

In rejecting this claim on post-conviction review,[8] the state court first cited the standard in Rule 3.220 of the Florida Rules of Criminal Procedure, which provides that the State must provide a defendant with listed witnesses' statements, including "all police and investigative reports of any kind prepared for or in conjunction with the case, but . . . not . . . the notes from which those reports were compiled." *See* Fla. R. Crim. P. 3.220(b)(1)(B). The court then applied this rule to the alleged discovery violation and claim by Petitioner, finding

> [t]he defendant does not demonstrate a facially sufficient claim. For example, the defendant does not establish that a possible discovery violation occurred. Although the defendant may believe that an officer's "field notes" should have been disclosed by the state during pre-trial discovery, rule 3.220 excludes such notes. Instead, the rule only requires the disclosure of "police and investigative reports" and excludes the state from being required to disclose "the notes" from which a police or investigative report is compiled. However, the defendant does not allege that the state failed to disclose any police or investigative reports in the instant case.
> Even if the "field notes" were subject to disclosure under rule 3.220, the defendant would not be entitled to such documents. In particular, the defendant alleges the state should have disclosed the officers' "field notes" that were taken during the investigation in an *unrelated criminal case* regarding Mr. James Smith. Contrary to the defendant's allegation, the

---

[8] This claim was not part of the limited evidentiary hearing held regarding Petitioner's Rule 3.850 motion.

rule only requires disclosure of "police and investigative reports of any kind prepared for or in connection with *the case*." By the defendant's own allegations, the "field notes" he references were taken in connection with a different criminal case. In other words, the state is not required to disclose all "field notes" taken during the investigation of a *different case* merely because the defendant *believes* such "notes" were exculpatory. Because the defendant does not establish that a discovery violation occurred, a <u>Richardson</u> hearing was not required. Therefore, counsel's performance was not deficient.

(Ex. R at 495) (footnotes omitted).

The court then discussed the other shortcomings of Petitioner's claim. For example, the court noted that even if a discovery violation occurred, Petitioner failed to show that any such violation was willful and substantial and instead was based only on conclusory allegations that the State "willfully suppressed" the notes and that they were "critical, exculpatory evidence." Further, the trial court pointed out that Petitioner also failed to allege how any nondisclosure of such notes prejudiced his trial preparation. (*Id.* at 497.)

Specifically regarding Petitioner's allegation that his counsel was ineffective for failing to depose the officers regarding their field notes, the state court found Petitioner's claim without merit, stating that Petitioner failed to show that his counsel did not depose the officers regarding their involvement in the case or the content of their reports. As a result his counsel could not be ineffective. (*Id.*) The First DCA *per curiam* affirmed

the court's denial of this claim without opinion.  (Ex. AA.)

For starters, a state court's interpretation of its own laws and rules of procedure—such as Rule 3.220 of the Florida Rules of Criminal Procedure—is a matter of state law that does not form a cognizable basis for federal habeas review. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Thus, to the extent Petitioner takes issue with the state court's interpretation of Rule 3.220, this Court is bound by that interpretation.

Further, a reasonable argument exists that counsel satisfied *Strickland*'s deferential standard despite not moving for a *Richardson* hearing because Petitioner failed to show that any discovery violation actually occurred. *See Harrington*, 562 U.S. at 105. As the trial court repeatedly pointed out, there was no real evidence that the requested field notes should have been disclosed or that the State willfully suppressed any evidence that was actually subject to disclosure.

Because of the lack of evidence, Petitioner's counsel's performance was not deficient for not notifying the court of a discovery violation or

moving for a *Richardson* hearing. And even if his counsel had moved for a *Richardson* hearing on the alleged discovery violation, the lack of evidence regarding any such discovery violation evidences that there would have been no basis for the court to grant one. Thus, Petitioner cannot show that he was in any way prejudiced by his counsel's conduct.

Accordingly, the Court concludes that the state court's determination that Petitioner failed to show his counsel's performance was deficient or that he was prejudiced by his counsel's failure regarding this alleged discovery violation is not contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). Thus, Petitioner is not entitled to federal habeas relief on ground seven.

**Ground Eight: Petitioner failed to exhaust his claim that the trial court's jury instructions regarding constructive possession constituted fundamental error at the time; Petitioner's appellate counsel was not ineffective for failing to raise this issue on direct appeal; and Petitioner's claim that the First DCA erred in denying Petitioner's habeas petition regarding ineffective assistance of appellate counsel does not present a basis for federal habeas relief.**

Petitioner's eighth ground for relief advances three separate claims: (1) the trial court's omission of portions of the jury instructions constituted fundamental error; (2) his appellate counsel was ineffective for failing to raise this issue on appeal; and (3) the court of appeals erred in dismissing

as successive his habeas petition alleging manifest injustice. Petitioner says that two weeks after the First DCA denied his petition, the First DCA decided *Porter v. State*, 88 So.3d 1074 (Fla. Dist. Ct. App. 2012), a case in which the court stated that the omission of the same portions of the jury instructions constituted fundamental error. (ECF No. 1 at 20.)

With regard to Petitioner's claim that the trial court's omission of portions of the jury instructions constituted fundamental error, Petitioner has failed to fully and fairly present this claim to the state courts. Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Notably, errors regarding jury instructions must be raised on direct appeal. *See Joseph v. Sec'y, Dep't of Corr.*, 567 F. App'x 893, 894 (11th Cir. 2014) ("Under Florida law, in the absence of an objection at trial, jury instructions may be challenged on appeal only if fundamental error occurred." (citing *Lane v. State*, 867 So. 2d 539, 541 (Fla. Dist. Ct. App.

2004)). Petitioner's trial counsel did not object to the jury instruction. Then, on appeal Petitioner raised only the issues of whether the trial court erred in denying his motion to suppress and whether part of his conviction violates double jeopardy; there was no mention of jury instructions. (Ex. G.) Thus, this claim was not raised on direct appeal.

Petitioner's first mention that the trial court fundamentally erred regarding the jury instructions appears in his second state habeas petition, which he filed pursuant to Rule 9.141(d) of the Florida Rules of Appellate Procedure. (Ex. M.) Rule 9.141(d) provides an avenue for alleging ineffective assistance of appellate counsel and not an avenue for alleging claims that the trial court erred. *See* Fla. R. App. P. 9.141(d). Accordingly, to the extent that Petitioner's state habeas petition for ineffective assistance of appellate counsel also included a claim of trial court error, that claim was not properly raised and thus not properly exhausted. *See Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994) (noting that a state habeas petitioner who "attempts to raise [a claim] in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default").

Petitioner's only other attempt to raise the issue was in his third

habeas petition, which the First DCA dismissed as successive under Rule

9.141(d)(6)(C) of the Florida Rules of Appellate Procedure. (Ex. N at 1–8,

41.) Because that petition was dismissed as successive, the claim was not

fully or fairly presented before the state courts. Lastly, Petitioner failed to

raise this issue in his Rule 3.850 motion. Thus, Petitioner failed to properly

exhaust this claim in the state courts.

When a petitioner fails to properly exhaust a federal claim in state

court, and it is obvious that the unexhausted claim would now be

procedurally barred under state law, the claim is procedurally defaulted.

*Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas

courts are precluded from reviewing the merits of procedurally

defaulted claims unless the petitioner can show either (1) cause for the

failure to properly present the claim and actual prejudice from the default,

or (2) that a fundamental miscarriage of justice would result if the claim

were not considered.  *Id*.  at 1302, 1306.  A fundamental miscarriage of

justice exists "where a constitutional violation has probably resulted in the

conviction of one who is actually innocent."  *Ward v. Hall*, 592 F.3d 1144,

1157 (11th Cir. 2010).  To state a credible claim of actual innocence, a

petitioner must present new reliable evidence that was not presented at

trial showing that "it is more likely than not that no reasonable juror would

have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Here, Petitioner has failed to show cause for his failure to properly present the claim and has failed to show that a fundamental miscarriage of justice would result if the claim were not considered. Indeed, Petitioner says the claim was not raised on direct appeal due to ineffectiveness of his appellate counsel, and that when he attempted to raise the issue in his two habeas petitions, it was rejected because he did not properly raise the issue. Petitioner, however, offers no explanation why he did not raise the issue in his Rule 3.850 motion, nor has he offered any new reliable evidence to show he is actually innocent of the charge to prove that a fundamental miscarriage of justice exists. Accordingly, Petitioner's claim is procedurally defaulted.

Even if Petitioner had properly exhausted his claim, this claim still fails on the merits.  Relying upon *Porter v. State*, 88 So. 3d 1074 (Fla. 1st DCA 2012), issued two weeks after the denial of Petitioner's second state habeas petition for ineffective assistance of appellate counsel, Petitioner says *Porter* shows the trial court committed fundamental error in omitting a portion of his jury instructions. Petitioner reads the holding in *Porter* too broadly and ignores that *Porter* was a direct appeal and not a claim of

ineffective assistance of appellate counsel.  In *Porter*, although the First

DCA observed dicta that "the trial court fundamentally erred in omitting

portions of the standard jury instruction on constructive possession" the

Court did not rely upon that error in reversing the conviction. Instead ,the

court held that "neither of the jury instruction issues is dispositive here

given that Appellant correctly argues that the trial court erred in denying his

motion for judgment of acquittal on all four counts." *Porter*, 88 So. 3d at

1074–75.

Thus, because the statement in *Porter* regarding the jury instructions

is dicta, it has no *stare decisis* effect on the issue. *See, e.g.*, *Edwards v.

Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010) ("And dicta is not binding

on anyone for any purpose."). Thus, *Porter* does not establish that the trial

court fundamentally erred in omitting portions of the jury instructions.

Under Florida Law, an error is fundamental when it "reach[es] down

into the validity of the trial itself to the extent that a verdict of guilty could

not have been obtained without the assistance of the alleged error." *Reed

v. State*, 837 So. 2d 366, 370 (Fla. 2002) (quoting *Brown v. State*, 124 So.

2d 481, 484 (Fla. 1960)) In the context of jury instructions, "fundamental

error occurs only when the omission is pertinent or material to what the jury

must consider in order to convict." *Stewart v. State*, 420 So. 2d 862, 863

(Fla. 1982), *cert. denied*, 460 U.S. 1103 (1983). Yet Petitioner has failed to show in either his petition or his reply that there would not have been a guilty verdict without the alleged erroneous jury instructions. Accordingly, Petitioner has failed to show there was any fundamental error at all.

Further, even assuming the trial court erred in giving the jury instruction Petitioner has failed to show that he would be entitled to habeas relief with regard to any erroneous jury instruction. Notably, "the fact that [a jury] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). "The only question for us is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right . . . ." (quoting *Cupp*, 414 U.S. at 146)). "[T]he instruction . . . must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (citing *Cupp*, 414 U.S. at 147). Petitioner's conclusory allegation that the alleged error in the jury instructions violated due process is insufficient to show he is entitled to habeas relief.

Accordingly, even if Petitioner's jury instruction claim was not procedurally defaulted, he has failed to present a meritorious claim entitling him to habeas relief. *See* 28 U.S.C § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

With regard to Petitioner's claim that his appellate counsel on direct review was ineffective for failing to raise the error in the jury instruction, Petitioner raised this claim in his second state habeas petition alleging ineffective assistance of appellate counsel. (Ex. M.) The First DCA *per curiam* denied the petition on the merits without opinion. The First DCA then denied his motion for rehearing in a written opinion. (*Id.* at 21, 28.)

 Considering the state court denied this claim on the merits, the Court must give the state court's finding double deference so that the question for this Court becomes whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Here, a reasonable argument exists that his appellate counsel satisfied *Strickland*'s deferential standard and, therefore, that the state court's rejection of Petitioner's argument and application of *Strickland* was not objectively unreasonable. *See Philmore v. McNeil*, 575 F.3d 1251,

1264 (11th Cir. 2009) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*.").

To prevail on claims that appellate counsel was ineffective, Petitioner must first show that appellate counsel was objectively unreasonable in not raising an omitted issue. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). The exercise of judgment involved in framing an appeal makes it "difficult to demonstrate that [appellate] counsel was incompetent" under *Strickland* for omitting a particular argument. *Smith*, 528 U.S. at 285-86 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")). In assessing appellate counsel's performance, "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." *Heath v. Jones*, 941F.2d 1126, 1130 (11th Cir. 1991). Rather, "effective advocates 'winnow out' weaker arguments even though the weaker arguments may be meritorious." *Id*. at 1131. When appellate counsel reviews the entire record, thinks about various claims, and then chooses to pursue only certain issues on appeal, counsel has not rendered ineffective assistance. *Id*. Although a non-appealed issue might have been successful if it had

been raised, appellate advocacy must be "judged in its entirety." *Id*.

To determine prejudice in the context of appellate counsel's effectiveness, the Court must review the merits of the neglected claim or claims. *Heath*, 941 F.2d at 1132. Failure to raise a claim will not be found prejudicial unless the claim would have a reasonable probability of success on appeal. *Id*.

On appeal, Petitioner's appellate counsel raised the following two issues: (1) whether the trial court erred in denying the appellant's motion to suppress, and (2) whether conviction for the sale, manufacture, delivery or possession with intent to sell methamphetamine and trafficking of methamphetamine violates double jeopardy. (Ex. G.) To counsel's credit the First DCA affirmed in part, reversed in part, and remanded the case with instructions for the trial court to vacate Petitioner's conviction on Count 1 based on Petitioner's double jeopardy claim. (Ex. I at 1–3.)

In determining what issues to raise on appeal, the issue for appellate counsel was not simply whether there was error by the trial court but rather whether appellate counsel could meet the high burden of review that the error by the trial court was fundamental error. The fundamental error standard of review applied because there was no objection to the jury instruction at trial. *See Farina v. Sec'y, Fla. Dep't of Corr.*, 536 F. App'x

966, 979–980 (11th Cir. 2013); *see also Hendrix v. State*, 908 So. 2d 412, 426 (Fla. 2005) ("Appellate counsel may not be deemed ineffective for failing to challenge an unpreserved issue on direct appeal unless it resulted in fundamental error.") Petitioner's appellate counsel, therefore, was required to determine whether he could satisfy the very high showing that the error in the jury instruction was such that it "reach[ed] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Reed*, 837 So. 2d at 370.

Under the circumstances it was not unreasonable for appellate counsel not to include this issue in the direct appeal, particularly in view of the fact that appellate counsel had raised a successful issue on appeal in challenging double jeopardy as to count one. In assessing whether appellate counsel was ineffective the Court must consider that "in the context of a direct appeal, appellate counsel does not have a duty to raise every non-frivolous issue, as an effective attorney will winnow out the weaker arguments, even if they have some merit." *Marshall v. Dep't of Corr.*, 661 F. App'x 971, 976 (11th Cir. 2016).

Evidently, Petitioner's appellate counsel determined that the two issues raised on appeal were the stronger arguments, one of which turned

out to be a winning argument. Thus, because appellate counsel was faced with deciding whether to raise an issue subject to a fundamental error standard of review—an issue that even in light of *Porter*[9] does not establish that the alleged jury instruction error constituted fundamental error—appellate counsel's decision was not objectively unreasonable and therefore does not constitute deficient performance.

Because Petitioner has failed to show that his appellate counsel's performance was deficient and because there is a reasonable argument that his appellate counsel satisfied the *Strickland* standard, the Court concludes that the First DCA's determination denying on the merits Petitioner's petition alleging ineffective assistance of appellate counsel was not contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). Thus, Petitioner is not entitled to federal habeas relief on this claim.

With regard to Petitioner's claim that the appellate court erred in denying Petitioner's third state habeas petition as successive, Petitioner's claim is a state law claim that presents no cognizable basis for federal

---

[9] In addition to the fact that the statement in *Porter* was dicta, *Porter* was not issued until after Petitioner's appellate counsel had fully briefed the issue on direct appeal.

habeas relief. After Petitioner's second state habeas petition alleging

ineffective assistance of appellate counsel was denied, Petitioner then filed

a third state habeas petition arguing that it was a manifest injustice to deny

his previous petition regarding ineffective assistance of appellate counsel.

(Ex. N at 1–8.)  Like in his second state habeas petition, Petitioner again

argued that the trial court fundamentally erred in omitting a portion of the

standard jury instruction on constructive possession and that his appellate

counsel was ineffective for not raising this issue on direct review. (*Id.*) The

difference between the two petitions was that Petitioner argued for the first

time that *Porter v. State*—which was released after the court denied his

second petition—addresses the same points of law raised in that petition.

(*Id.*) The First DCA dismissed this petition as successive, citing Rule

9.141(d)(6)(C) of the Florida Rules of Appellate Procedure. (*Id.* at 41.)

In other words, Petitioner is attempting to argue that the First DCA

erred in its interpretation and application of Rule 9.141(d)(6)(C).[10] As

discussed above, however, a federal court may grant habeas relief to a

state prisoner "only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States." § 2254(a); *Wilson v.*

---

[10] Rule 9.141(d)(6)(C) provides that the appellate court "may dismiss a second or successive petition if it does not allege new grounds and the prior determination was on the merits, or if a failure to assert the grounds was an abuse of procedure." Fla. R. App. P. 9.141(d)(6)(C).

*Corcoran*, 562 U.S. 1, 5 (2010). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 7654, 780 (1990)). This is because "a state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) (quoting *Carrizales v. Wainwright*, 699 F.2d 1053, 1053–54 (11th Cir. 1983)).

"The federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate." *Wright v. Secretary, DOC*, No. 3:13-cv-1436-J-39JBT, 2016 WL 1110453, at *3 (M.D. Fla. Mar. 22, 2016) (citing *McCoy v. Newsome*, 953 F.2d 1252, 1264 (11th Cir. 1992) (per curiam), *cert denied*, 504 U.S. 944 (1992)). Here, there has been no such breach. Petitioner has failed to make any showing that the First DCA breached a constitutional mandate in denying his petition as successive under Rule 9.141(d)(6)(C). Petitioner is not entitled to relief on this state-law claim.

In sum, Petitioner is not entitled to relief on any of his three claims in ground eight.

**Ground Nine: Petitioner's claim that the trial court erred in denying his motion for appointment of counsel for his Rule 3.850 evidentiary hearing does not provide a basis for federal habeas relief.**

Petitioner contends that the trial court erred in denying his motion for appointment of counsel for the evidentiary hearing on Petitioner's Rule 3.850 motion. Petitioner says that counsel was necessary for him to establish his constitutional claims. (ECF No. 1 at 21.)

The state court's denial of Petitioner's motion for appointment of counsel for his evidentiary hearing is a state law claim that does not provide a basis for federal habeas corpus relief. Again, a federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 7654, 780 (1990)).

The Florida Rules of Criminal Procedure guide the state court in considering whether an individual is entitled to appointment of counsel for seeking post-conviction relief. *See* Fla. R. Crim. P. 3.850(f)(7).[11] Notably,

---

[11] Specifically, this rule provides that

[t]he court may appoint counsel to represent the defendant under this rule. The factors to be considered by the court in making this determination

this determination is discretionary. *See Graham v. State*, 372 So. 2d 1363, 1366 (Fla. 1979). Federal law provides that "[s]tates have no obligation to provide [postconviction] relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." *Pennsylvania v. Finley*, 481 U.S. 551, 556–57 (1987) (citation omitted)).

Therefore, the trial court's denial of Petitioner's motion for appointment of counsel for post-conviction proceedings cannot provide a basis for federal habeas relief. *See Wright*, 2016 WL 1110453, at *2–*4 (denying federal habeas relief for the claim that "the trial court abused its discretion by not granting Petitioner's motion for appointment of counsel for the post conviction evidentiary hearing"); *see also Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) ("This Court has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief."), *cert. denied*, 558 U.S. 995 (2009).

For these reasons, Petitioner is not entitled to federal habeas relief on ground nine.

---

include: the adversary nature of the proceeding, the complexity of the proceeding, the complexity of the claims presented, the defendant's apparent level of intelligence and education, the need for an evidentiary hearing, and the need for substantial legal research.

Fla. R. Crim. P. 3.850(f)(7).

**Ground Ten: Because Petitioner had the opportunity to testify, the trial court did not commit fundamental error at the September 2013 evidentiary hearing when it allegedly failed to allow him the opportunity do so.**

Lastly, Petitioner argues that the trial court fundamentally erred when it denied Petitioner the right to testify at the evidentiary hearing held on September 19, 2013. Petitioner alleges that the trial court repeatedly told Petitioner he was testifying and ordered him to stop. As a result, Petitioner says that the trial court committed fundamental error, in violation of his Sixth and Fourteenth Amendment rights. (ECF No. 1 at 22.)

Petitioner first raised this issue on appeal from the state court's denial of his Rule 3.850 motion. (Ex. X.) The First DCA rejected this claim on appeal when it affirmed. (Ex. AA.). The Court concludes that the state court's decision denying this claim on appeal from the denial of his Rule 3.850 motion is not contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court or based on an unreasonable determination of the facts because there is no factual basis for this claim.

A review of the transcript of the evidentiary hearing, discloses that Petitioner was provided the opportunity to testify on his own behalf and chose not to testify. (Exs. R at 412–82.)  While it is true that the trial court repeatedly told Petitioner not to testify, it only did so in the context of

Petitioner's examination of witnesses. (*Id.* at 428–30, 432, 446, 455.) The trial court also repeatedly told Petitioner that he could testify if he wanted to after questioning witnesses. (*Id.* at 413, 420, 428, 430, 432, 434, 446, 457.) After Petitioner finished calling witnesses, however, he offered evidence but did not testify on his own behalf. (*Id.* at 479–81.) He simply said, "That's all I've got." (*Id.* at 481.) Petitioner's choice not to testify on his own behalf was not a denial of his right to testify by the trial court.

Because there is no factual support for Petitioner's claim, the Court concludes that the state court's decision denying this claim on appeal is not contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court or a decision based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2).  Petitioner is not entitled to federal habeas relief on ground ten.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court

issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## CONCLUSION

Accordingly, for the foregoing reasons, it is respectfully

**RECOMMENDED:**

1. The Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 1, should be **DENIED**.

2. A certificate of appealability should be **DENIED.**

**IN CHAMBERS** this 31st day of January 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.